UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEANNA R. M.[1], | ) |
|        Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:21-cv-193 |
| KILOLO KIJAKAZI[2], Commissioner of Social Security, | ) ) ) ) |
|        Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Deanna M., on March 18, 2021. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Deanna M., filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of September 21, 2017. (Tr. 15). Deanna M. later amended her alleged onset date to January 1, 2018. (Tr. 15). The Disability Determination Bureau denied Deanna M.'s applications initially on December 4, 2017, and again upon reconsideration on April 10, 2018. (Tr. 15, 128-29, 152). Deanna M. subsequently filed a timely request for a hearing on May 2, 2018. (Tr. 169). A hearing was held on November 19, 2019. (Tr. 15). Subsequent to the 2019 hearing, the ALJ solicited evidence from a medical expert. (Tr. 15, 1486). Deanna M. then requested a supplemental hearing based on the

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

information from the medical expert. (Tr. 15, 395). A supplemental hearing was held on April 28, 2020, before Administrative Law Judge (ALJ) Romona Scales. (Tr. 36). Vocational Expert (VE) Rebecca Kendrick also appeared at the hearing. (Tr. 70). The ALJ issued an unfavorable decision on June 2, 2020. (Tr. 15-28). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

First, the ALJ found that Deanna M. met the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 18). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Deanna M. had not engaged in substantial activity since January 1, 2018, the amended alleged onset date. (Tr. 18).

At step two, the ALJ determined that Deanna M. had the following severe impairments: seronegative rheumatoid arthritis (SRA), headache disorder, multilevel degenerative disc disease, bilateral knee degenerative joint disease, the late effects of right shoulder impingement status post arthroscopic intervention, and an obese body habitus. (Tr. 18). Deanna M. also alleged disability due to obstructive sleep apnea (OSA), an asthmatic disorder, hypertension, and an affective/anxiety disorder. (Tr. 18). However, the ALJ indicated that those impairments caused no more than minimal limitations on her ability to engage in basic work activities, and therefore considered them non-severe. (Tr. 18-19). The ALJ also found that Deanna M.'s right hip "bushing" disorder, nerve/neurologic complications, and the need for supplemental oxygen were non-medically determinable impairments because they were not supported by objective evidence. (Tr. 20).

At step three, the ALJ concluded that Deanna M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15-17). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 15-17). The ALJ considered whether the severity of Deanna M.'s mental impairments met or medically equaled the criteria of Listings 1.02, 1.04, and 14.09. (Tr. 21). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. (Tr. 18-19). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 19). The ALJ found that Deanna M. had no limitations in understanding, remembering, or applying information; no limitations in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing herself. (Tr. 19-20). Since Deanna M.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B. criteria were not satisfied. (Tr. 20).

After consideration of the entire record, the ALJ then assessed Deanna M.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to occasionally lift 10 pounds maximum, stand and/or walk for up to 2 hours in an 8-hour work period, and sit for up to 6 hours in an 8-hour work period. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl but she can never climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead with the left upper extremity, but she cannot reach overhead with the right upper extremity. The claimant frequently handle, finger and reach in all other directions, bilaterally. The claimant can occasionally push/pull, and use foot controls,

>bilaterally. The claimant must avoid concentrated exposure to extreme temperatures and hazards, including slippery, wet or uneven surfaces. Lastly, the work must not include/require fast paced production or quota.

(Tr. 21). After considering the evidence, the ALJ found that Deanna M.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 22). However, she found that Deanna M.'s statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record. (Tr. 23).

At step four, the ALJ found that Deanna M. was unable to perform her past relevant work as a childcare provider. (Tr. 27). However, the ALJ found jobs that existed in significant numbers in the national economy that Deanna M. could perform. (Tr. 27-28). Therefore, the ALJ found that Deanna M. had not been under a disability, as defined in the Social Security Act, from January 1, 2018, the amended alleged onset date, through the date of this decision. (Tr. 28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

4

L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law.  **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity."  **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled, and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities."  **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment

does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Deanna M. has requested that the court remand this matter for additional proceedings. In her appeal, Deanna M. has offered three arguments in favor of remand. Specifically, she alleges that the ALJ erred in evaluating medical opinion evidence, failed to include her need for a cane in the RFC, and failed to support the finding that she did not meet or medically equal Listing 14.09(A).

First, Deanna M. alleges that the ALJ erred by failing to properly evaluate medical opinion evidence. She argues that the ALJ improperly relied on outdated state agency opinions and failed to consider her treating rheumatologist's opinion.

The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with this requirement. *See* **20 C.F.R. § 416.920c**

("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources"). Now, an ALJ must consider all medical opinions based on factors set out by the Social Security Administration with *supportability* and *consistency* being the most important factors for the ALJ to discuss. **Kaehr v. Saul**, 2021 U.S. Dist. LEXIS 18500, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (emphasis added). An ALJ can, but is not required to, explain how she evaluated the remaining factors which include the relationship with the claimant and any specializations. **20 C.F.R. §404.1520c**.

The state agency physicians in this case provided their opinions on December 4, 2017, and April 9, 2018. (Tr. 120, 141). Deanna M. was diagnosed with rheumatoid arthritis in May 2019. (Tr. 1408-09, 1415). In August 2019, her treating rheumatologist, Dr. Steven C. Behrendsen, provided a letter indicating she was "in far too much pain to work in any capacity." (Tr. 967). In April 2020, Dr. Behrendsen provided a second letter indicating that Deanna M. had been on medication for nine months but that she was "still in far too much pain to work in any capacity." (Tr. 1685). He elaborated by stating "it is unlikely that [] [she] will become able to work in any meaningful capacity for the next 12 months or longer." (Tr. 1685). One month later, Dr. Behrendsen provided a more detailed letter to Deanna M.'s attorney, stating that as of January 2020, she had experienced "significant incremental improvement in her rheumatoid arthritis symptoms." (Tr. 1686). He noted that she continued to suffer from residual chronic pain related to injuries from a car accident but stated he "would not be the appropriate physician to give an opinion on that." (Tr. 1686). He stated that "[a]s far as [her] rheumatoid arthritis [wa]s concerned, she ha[d] responded quite nicely to current treatment" and that there were "additional treatment options [that he] c[ould] add to her treatment regimen in the event that [it] bec[ame] necessary over time." (Tr. 1686).

The ALJ noted that the only medical opinions in the record were the two opinions from the state agency physicians and the one opinion from the medical expert after the first hearing. (Tr. 26). The ALJ was unpersuaded by the state agency opinion at the initial level but was persuaded by the state agency opinion at the reconsideration level. (Tr. 26). The ALJ did find that the medical evidence required further limitations with regard to the use of the upper extremities. (Tr. 26). The ALJ found the medical expert's opinion to be generally persuasive. (Tr. 26).

Deanna M. asserts that the ALJ should have considered Dr. Behrendsen's reports as a medical opinion and also should have considered the supportability and consistency of his treatment notes. The ALJ did not err by failing to explicitly discuss or rely on Dr. Behrendsen's reports, as they do not qualify as medical opinions. Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. 404.1527(a)(1), 416.927(a). General statements that the physician believed the claimant was in too much pain to work do not qualify as a medical opinion. There is no information in the letters regarding the severity of the impairments, nor any restrictions or limitations related to her symptoms. The letters do no more than indicate Dr. Behrendsen's belief that Deanna M. was in too much pain to work. (R. 967, 1685).

Dr. Behrendsen's May 2020 letter does not even support Deanna M.'s own assertions or his prior letters. In the May 2020 letter, only a month after the April 2020 letter indicating she could not work due to pain related to arthritis, Dr. Behrendsen indicated that Deanna M. had shown significant improvement in her rheumatoid arthritis symptoms on January 16, 2020. (Tr.

8

1686).  This is not consistent with the April 2020 letter.  Dr. Behrendsen further indicated that Deanna M.'s continued reports of pain were likely linked to her car accident in the summer of 2019.  (Tr. 2019).  He then stated that he would not be the physician to provide an opinion on whether she was disabled as a result of the injuries from the car accident.  (Tr. 1686).  Finally, he stated that Deanna M. was responding well to her current arthritis treatment and that further treatments were available if she needed them at a later date.  (Tr. 1686).  This letter is not consistent with the prior two letters, which stated she was in too much pain to work "in any capacity."  (Tr. 967, 1685).  The May 2020 letter further linked any remaining pain to her car accident.  Deanna M. asserts that the ALJ should have found Dr. Behrendsen's "opinions" to be more persuasive based on his specialty as a rheumatologist.  However, Dr. Behrendsen specifically stated that he could not provide an opinion related to her chronic pain from the car accident.  (Tr. 1686).  The ALJ did not err in failing to discuss the three letters because they did not qualify as medical opinions and were inconsistent from one another and the medical record as a whole.

     Next, Deanna M. takes issue with the ALJ's reliance on the opinion of Dr. Fischer, the medical expert.  She asserts that Dr. Fischer's opinion was objectively inconsistent with the medical record, which became evident at the hearing.  At the hearing, Dr. Fischer stated that his opinion was in part based on treatment notes from Dr. Behrendsen that showed "no[] trace of synovial thickening in either wrist" and made no reference of her hands. (Tr. 54).  Therefore, he testified that "typically, her physical exam findings were minimal."  (Tr. 54).  However, at the hearing, Deanna M.'s counsel showed Dr. Fischer several medical records that contradicted this finding, including treatment notes that indicated synovial thickening and tenderness in both wrists, as well as synovial thickening and tenderness in multiple joints in the hands and fingers.

(Tr. 54-55, 1398, 1401, 1404, 1560). While Dr. Fischer stated he reviewed the totality of the medical evidence before providing his opinion, it is clear from the hearing testimony that he was not aware of the amount of evidence that related to synovial thickening and tenderness in her wrist and hands. Therefore, Dr. Fischer could not have fully considered the medical evidence in making his opinion, making the ALJ's reliance on it improper.

Dr. Fischer also testified that he could not say how long Deanna M.'s flare ups would last, and that perhaps the flare up would clear up in a week if she took prednisone, but there was no evidence in the record to support the conclusion. (Tr. 56). Dr. Fischer further admitted that it was possible that Deanna M. would be more limited in her use of her hands during flare ups. He also relied on a note from January 2020 that indicated her flare ups were becoming fewer and farther between. (Tr. 1560). However, there is no indication of how often she experienced flare ups or how long each would last.

On the contrary, treatment notes from July through September 2019 indicated that Deanne M. was experiencing symptoms in her wrists and hands for a period of over three months. In July 2019, she started new medication, as her prior medication's side effects caused nausea and vomiting. (Tr. 1405). In August 2019, her medication was increased because she continued to experience "significant widespread polyarthralgia with swelling and significant morning stiffness." (Tr. 1401-02). In September 2019, Dr. Behrendsen stated Deanna M. was "experiencing a flare of her wrist currently." (Tr. 1398). As a result, she was placed an eight-week prednisone taper. (Tr. 1398). It is evident that Dr. Fischer speculated, that despite being prescribed an eight-week taper, Deanna M.'s flare ups "might last a week." (Tr. 56). The medical evidence indicated that she experienced synovial thickening and tenderness in her hands and wrists that lasted for three months, and there was no indication that she found immediate

relief from medication for her flare ups.

The ALJ further erred by failing to address these contradictions in Dr. Fischer's testimony and opinion. Dr. Fischer's testimony at the supplemental hearing showed that he did not fully consider the evidence in the record when forming his opinion. In fact, he admitted that he did not fully consider the synovial thickening and tenderness in her wrists and hands. But, even so, the ALJ relied on his opinion in crafting the RFC.

Dr. Fisher also improperly speculated that Deanna M. would not need further limitations as a result of flare ups because he thought they might not last for longer than a week, despite a lack of medical evidence to support this opinion. Dr. Fischer admitted that Deanna M. may require further limitations than those included in the RFC during flare ups but that he could not say how often the flare ups would occur or for how long they would last. (Tr. 63). The ALJ indicated that the record did not address how long a flare could last, and Dr. Fischer responded by admitting there was no objective evidence to support his opinion outside of a treatment note from January 2020 that stated the flare ups were becoming fewer and further between. (Tr. 64). Without evidence of how frequent Deanna M.'s flare ups occurred or how long they lasted the RFC was not supported by substantial evidence. Dr. Fischer admitted that during flare ups, Deanna M. may be more limited than he found in his opinion or than the ALJ found in the RFC. The hearing testimony indicated that Dr. Fischer's opinion was not supported by substantial evidence, and therefore the ALJ's reliance on his opinion in crafting the RFC was in error. *See generally* **Moore**, 743 F.3d at 1120–21; **Bates**, 736 F.3d at 1097.

Deanna M. makes other arguments regarding the RFC and the Listing requirements. However, because the ALJ erred in analyzing the opinion evidence, the court need not address the additional arguments at this time. The ALJ's failure to properly analyze Dr. Fischer's opinion and

11

testimony at the supplemental hearing may alter the RFC determination and the consideration of the Listings.  The ALJ will have the opportunity to revisit the other issues on remand.

Based on the foregoing reasons, the court the decision of the Commissioner is **REMANDED**.

ENTERED this 27th day of September, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge